FILED BY____FS____D.C.
Apr 19, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-mj-02765-Torres

UNITED STATES OF AMERICA

v.

GARY LINCOLN DAVIS,
    **Defendant.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?  No.

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  No.

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    <u>S/ Marc Chattah</u>
       Marc Chattah
       Assistant United States Attorney
       99 NE 4th Street
       Miami, FL 33132
       (305) 961-9087
       Marc.Chattah@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>GARY LINCOLN DAVIS,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 23-mj-02765-Torres<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 2022 to April 18, 2023__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute fentanyl |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute fentanyl |
| 21 U.S.C. § 846 | Conspiracy to possess with intent to distribute cocaine |
| 21 U.S.C. § 846 | Attempted possession with intent to distribute cocaine |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

ID#28346 FBI
_____
*Complainant's signature*

FBI Special Agent Joseph Dalessio
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by _____Telephone_____

Date: 4/19/2023

_____
*Judge's signature*

City and state: Miami, Florida          Honorable Edwin G. Torres, United States Chief Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Joseph Dalessio, being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since January 2019. I have experience in the investigation of violations of federal narcotics laws. I have conducted and participated in numerous narcotics investigations resulting in the arrest and conviction of drug distributors for violations of the Controlled Substances Act, and I have conducted numerous search warrants and participated in the seizure of controlled substances. I am familiar with the method of use, effects, distribution, appearance, and method of manufacture of controlled substances.

2. I submit this affidavit in support of a criminal complaint and arrest warrant charging that, from in or around the month of April, 2022 and continuing until at least on or about April 18, 2023, Gary Lincoln DAVIS, did conspire to possess with intent to distribute more than 40 grams of fentanyl in violation of Title 21, United States Code, Section 846, did possess with intent to distribute more than 40 grams of fentanyl in violation of Title 21, United States Code, Section 841(a)(1), did conspire to possess with intent to distribute more than five kilograms of cocaine, in violation of Title 21, United States Code, Section 846, and did attempt to possess with intent to distribute more than 5 kilograms of cocaine in violation of Tile 21, United States Code, Section 846.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The information contained herein is intended to establish probable cause and does not contain all of the facts known to Law Enforcement.

1

## PROBABLE CAUSE

4.  Beginning in or around April of 2022, Special Agents with the FBI Miami Field Office initiated an investigation into the drug trafficking activities of Gary Lincoln DAVIS and his associates in Colombia and elsewhere.

5.  During the months of March and April 2022, Special Agents with the FBI Miami Field Office, had a Confidential Human Source 1 ("CHS1"), who was in contact with a broker of narcotic transactions, alias NUT, who Law Enforcement believes was located in or around Nicaragua. Over the course of several recorded phone calls, CHS1 had explained to NUT that CHS1 was a pilot with the capacity to transport up to 90 kilograms of cocaine from Colombia to the United States. NUT explained to CHS1 that he had a Colombian source of supply that could provide 90 kilograms of cocaine to be transported to the United States.

6.  In or around April 2022, NUT conducted a group call with the user of WhatsApp telephone number +1-786-290-7634 and CHS1. This phone call was recorded by CHS1. Law Enforcement later determined the user of the telephone to be DAVIS. DAVIS and CHS1 then agreed to meet in person on or about April 19, 2022 to discuss the logistics of the 90-kilogram deal.

7.  On or about April 19, 2022, CHS1 and DAVIS met at a Starbucks in Fort Lauderdale. CHS1 got into DAVIS's vehicle and then showed DAVIS the area in which he should park the day the kilograms were set to arrive and be distributed to DAVIS. This meeting was recorded by CHS1. Law enforcement surveilled the meeting.

8.  In or around April of 2022, CHS1 flew to Colombia and met in person with an individual claiming to have access to the 90 kilograms of cocaine. The 90-kilogram deal never came to fruition, but over the next several months, throughout 2022, CHS1 and DAVIS stayed in contact with each

other.

9. On or about November 11, 2022, CHS1 and DAVIS exchanged WhatsApp text messages. CHS1 asked DAVIS, "Are you in Miam [sic]? I'm in Europe right now but I need someone who could help me find some good Fnty." According to CHS1, Fnty is an abbreviation for fentanyl. DAVIS responded on November 8, 2022, "Good morning I'm back in Atlanta Georgia. I was in Miami for 3 days." CHS1 responded, "Uh", "Did you understan [sic] what I'm looking for?" DAVIS responded, "Yes I will look for it."

10. On or about December 9, 2022, and December 10, 2022, CHS1 and DAVIS exchanged WhatsApp text messages and agreed to meet each other in the area of West Palm Beach, Florida. On or about December 10, 2022, CHS1 and DAVIS met in the area of West Palm Beach, Florida. CHS1 asked DAVIS if he (DAVIS) could find 100 grams of fentanyl as a sample to sell to the CHS1. DAVIS told CHS1 he would go down to Miami and "catch the guy," and then he would call CHS1. This meeting was recorded by CHS1.

11. On or about December 11, 2022, DAVIS called CHS1 and informed CHS1 that he had the 100 grams of fentanyl for $5,500. CHS1 and DAVIS agreed to meet on or about December 13, 2022 to conduct the transaction.

12. On or about December 13, 2022, a controlled law enforcement operation CHS1 and DAVIS met in a parking lot in Miami, Florida and DAVIS provided approximately 84 grams of fentanyl. Law enforcement surveilled the meeting. A Drug Enforcement Administration ("DEA") Laboratory later confirmed that the 84 grams was fentanyl.

13. After the 84 grams of fentanyl was received from DAVIS, DAVIS and CHS1 stayed in contact over the next couple of months so that DAVIS could obtain pricing for 500 grams of fentanyl for CHS1. On or about January 14, 2023, CHS1 met with DAVIS in person in or around Fort

3

Lauderdale, Florida to discuss the logistics of future narcotic transactions. DAVIS informed CHS1 that he hadn't found anything yet. CHS1 told DAVIS that in the future, DAVIS can deal with the CHS1's friend, (CHS2), if CHS1 is not available. DAVIS also asked CHS1 if CHS1 knew when CHS1 was going to have some food. According to the CHS1, food is a term that the CHS1 and DAVIS used to speak in code about kilograms of cocaine. This meeting was recorded by CHS1.

14. On or about January 19, 2023, DAVIS called CHS1 and stated that he (DAVIS) found someone selling a kilogram of fentanyl for a price of $60,000 and another price of $80,000. DAVIS told CHS1 that CHS1 would have to bring the money to Miami to purchase it. This call was recorded by CHS1. CHS1 and DAVIS later spoke on the same date and DAVIS was able to get an additional price of $56,000 for one kilogram of fentanyl. DAVIS then asked CHS1 what CHS1 wanted to pay for it because DAVIS stated he, "doesn't mess with this stuff." This call was recorded by CHS1. During the call, there was at least one other unidentified person either on the phone with DAVIS or with DAVIS and their voice could be heard on the recorded call discussing the logistics of the deal with DAVIS and CHS1. The unidentified person explained the reasoning for the high pricing.

15. On or about January 20, 2023, CHS1 conducted a recorded call with DAVIS in which DAVIS stated the price of one kilogram of fentanyl was $52,000 and a half kilogram of fentanyl was $26,000.

16. On or about February 8, 2023, CHS1 conducted a call with DAVIS and inquired about DAVIS finding another sample of fentanyl. CHS1 told DAVIS to speak with the CHS1's partner (CHS2) because CHS1 was going to be in Europe. This call was recorded by CHS1.

17. On or about February 22, 2023, CHS1 conducted a call with DAVIS in which CHS1 told DAVIS that he would have to deal with CHS1's partner, CHS2, because CHS1 was in Spain. DAVIS also asked CHS1, "Remember the stuff I asked you for at the gas station, I was trying to see if you

4

could help me with that?" CHS1 explained that this statement by DAVIS was in reference to the meeting on or about January 14, 2023 at a gas station in Fort Lauderdale, Florida, between DAVIS and CHS1, in which DAVIS asked CHS1 if CHS1 had any food. CHS1 explained to Law Enforcement that DAVIS was again inquiring about obtaining kilograms of cocaine from CHS1. DAVIS stated that he didn't have any money to give to CHS1, but asked CHS1 to give him (DAVIS) one or two (referring to kilograms of cocaine). This call was recorded by CHS1.

18. On or about February 25, 2023, CHS2 and DAVIS exchanged introductory phone calls. DAVIS explained to CHS1 that he was trying to get ahold of CHS2 because he (DAVIS) had the sample (fentanyl) to bring to CHS2. DAVIS and CHS2 discussed meeting in the future to conduct a transaction for fentanyl. CHS2 and DAVIS talked in code regarding the pricing of fentanyl. DAVIS asked CHS2 about the ticket, which CHS2 explained to Law Enforcement was the going price for fentanyl. CHS2 explained that about two weeks ago it was 43 for everything. CHS2 explained to Law Enforcement that 43 was in reference to the price of a kilogram of fentanyl, $43,000. DAVIS went on to explain, "That ain't my department" and that he had to ask a friend who had to ask a friend. DAVIS explained that for the half-time show, which CHS 2 stated was in reference to a half of kilogram of fentanyl, was 26, reference to $26,000.

19. On the same call that occurred on or about February 25, 2023, DAVIS asked CHS2 if CHS2 had food from Miguel and if so when. CHS2 explained that food was a reference to kilograms of cocaine and that Miguel is the name that CHS1 utilized when speaking with DAVIS. CHS2 replied that the show was over and DAVIS told CHS2 to let him know when they start performing again. According to CHS2, the show was also a code phrase for kilograms of cocaine and mention of when they would start performing again is when they would be available for sale. CHS2 was able to record the call with DAVIS.

5

20. On or about March 6, 2023, CHS1 conducted a call with DAVIS. During the call, DAVIS stated that his people went on cruise but that he (DAVIS) was going to try to find other people to acquire the half-kilogram of fentanyl from. DAVIS stated that he would get a sample and bring it to CHS2 if it was from a new supplier. CHS2 was able to record the call.

21. On or about March 7, 2023, DAVIS called CHS1 and stated that he had a supplier (for the half kilogram of fentanyl) for 32, and that he had a sample of it. According to CHS1, this was in reference to $32,000. DAVIS said he also had someone else looking, but he had to go through several people. CHS1 told DAVIS to call CHS 2 to give him the sample. CHS1 also told DAVIS that CHS1 had a toy coming in with some stuff and that CHS1 could hold 10 for DAVIS, but DAVIS had to provide something in exchange. According to CHS1, a toy was reference to a plane that was coming with 10 kilograms of cocaine. DAVIS asked when the stuff would come because he needs to leave for Atlanta and CHS1 told him soon. CHS1 was able to record the call with DAVIS.

22. On or about March 7, 2023, DAVIS called CHS2 and agreed to meet with CHS2 in the area of the Broward Mall in Plantation, Florida to provide the sample of fentanyl. In a controlled Law Enforcement Operation, CHS2 was equipped with an audio and video recorded device and made contact with DAVIS in the parking lot of Broward Mall. DAVIS got into CHS2's vehicle and provided the sample of fentanyl. Law Enforcement conducted surveillance of the meeting and was able to determine that DAVIS brought an unknown individual in the vehicle with him. After the transaction was conducted, DAVIS then proceeded back to the vehicle he arrived in and left the area. A field test later revealed a positive indication on the sample for the presence of fentanyl.

23. After receiving the sample, CHS1 and CHS2 stayed in contact with DAVIS over the course of the next month. On or about March 10, 2023, CHS2 and DAVIS agreed to meet to conduct the transaction for half a kilogram of fentanyl for $32,000, but due to the supplier of the fentanyl not

6

wanting to conduct the transaction in the area that Law Enforcement deemed safe, the deal did not go through.

24. On or about April 7, 2023, CHS2 and DAVIS agreed to meet to conduct the half kilogram of fentanyl transaction for $32,000. In a controlled Law Enforcement operation, DAVIS met with CHS2 in a parking lot in or around Miami, Florida. DAVIS got into CHS2's vehicle and stated that he was able to come up with approximately 13 ounces of fentanyl and not the full 500 grams of fentanyl. As a result, CHS2 and DAVIS did not complete the transaction. This meeting was audio and video recorded by CHS2 and DAVIS was surveilled by Law Enforcement during and after the meeting.

25. On or about April 10, 2023, CHS2 and DAVIS agreed to meet to conduct the half kilogram of fentanyl transaction for $32,000. DAVIS met with CHS2. Ultimately, DAVIS' source of supply was unable to supply DAVIS with the fentanyl and the transaction never occurred.

26. On or about April 12, 2023, CHS1 conducted a phone call with DAVIS. CHS1 asked DAVIS if he was still interested in his stuff, referencing the kilograms of cocaine that DAVIS thought CHS1 was flying in from Colombia. CHS1 asked DAVIS how many kilograms he wanted and DAVIS replied, "Whatever you feel comfortable with man, it's your stuff." DAVIS asked what the ticket was and CHS1 replied around 19. CHS1 explained that ticket was code for the cost of a kilogram of cocaine and 19 was reference to $19,000. CHS1 explained that the quality was first class and no cut. DAVIS explained that if CHS1 gave him 18, he could get CHS1 the same thing right now. CHS1 stated that DAVIS was saying that the price CHS1 gave was too expensive. CHS1 asked DAVIS if he was going to be able to provide any money for the deal and DAVIS explained that if CHS1 provided DAVIS with 1 or 2 (kilograms) he could sell them and give CHS1 the money the same day. DAVIS went on to state that he doesn't even need 10 (kilograms), "You can give me 5 or

7

whatever you're comfortable with --- 4." DAVIS told CHS1 that whatever CHS1 was comfortable with. CHS1 was able to record this call.

27. On or about April 17, 2023, CHS1 conducted a recorded call with DAVIS. During the call, DAVIS confirmed he was going to travel from Atlanta, Georgia to Miami, Florida to conduct a deal with CHS1. CHS1 told DAVIS that CHS1 had "10 keys separated for you, so you let me know, 5, 6, and then I give you the rest, when you pay me." DAVIS responded "Ok." DAVIS and CHS1 discussed possible pricing and DAVIS went on to explain the current pricing in Atlanta. DAVIS and CHS1 agreed to meet each other on April 18, 2023.

28. On or about April 18, 2023, CHS1 conducted a call with DAVIS. CHS1 told DAVIS that CHS1 would meet him (DAVIS) in the same place that they did the first deal at (5715 NW 7th Street, Miami, Florida). DAVIS agreed and stated he was fifteen minutes away.

29. On or about April 18, 2023, law enforcement equipped CHS1 with a live monitoring recording device and 6 inert kilograms of cocaine in a backpack. CHS1 was searched prior to the operation for excess currency and contraband, and none was discovered. Assisted by law enforcement, CHS1 then parked in the parking lot of Publix, located at 5715 NW 7th Street, Miami, Florida, in CHS1's vehicle. Law Enforcement was conducting surveillance of the parking lot and observed CHS1 at this time.

30. A black male, known to law enforcement as DAVIS was observed driving a black Chrysler Minivan with South Carolina Registration UYY323 in the parking lot of the Publix. DAVIS then parked his vehicle to the west of CHS1 in the same parking lot. DAVIS then got into CHS1's vehicle and greeted CHS1.

31. After exchanging pleasantries, DAVIS stated to CHS1, "This is the sample from the last shit he had given me, man." According to a later debrief of CHS1, what DAVIS provided to CHS1

8

was a sample of fentanyl. CHS1 then told DAVIS, "I have 6 kilos for you here," (in reference to 6 kilograms of cocaine). DAVIS and CHS1 agreed to a price of $16,000 per kilogram. DAVIS stated he was going to start working on them and he was also going to test it and cook it. CHS1 told him that it was pure, 100 percent, directly from Colombia.

32. After getting confirmation from CHS1 that DAVIS took possession of the bag that contained 6 inert kilograms of purported cocaine, law enforcement then moved in to effect the arrest of DAVIS. DAVIS was observed by law enforcement exiting the vehicle with the same bag previously stated in his possession. Law enforcement, including but not limited to marked Florida Highway Patrol (FHP) vehicles with their blue lights activated, FBI, DEA, and City of Miami Police Detectives converged on the scene, donning police style ballistic vests, tactical gear, and respective law enforcement badging displayed on their outermost garments.

33. FBI Agents identified themselves and ordered DAVIS on the ground. DAVIS then dropped the previously mentioned bag, and fled eastbound, across NW 57th Avenue, across north and southbound lanes of traffic with law enforcement pursuing on foot. FHP Troopers then joined the foot pursuit and DAVIS was warned that a police K9 would be released. Lead law enforcement personnel pursuing DAVIS then stopped running so as to not confuse the FHP K9. Ultimately, the K9 was not deployed, and DAVIS was last observed running east through an alley way between two structures.

34. A perimeter was then established, but DAVIS eluded authorities and was not found. Law enforcement then returned to the Publix parking lot where DAVIS's vehicle was parked and it was eventually towed from the scene to the FBI Miami Field Office located at 2030 SW 145th Avenue, Miramar, Florida. Law enforcement then followed CHS1 back to a neutral briefing location. CHS1 was searched and law enforcement took possession of the sample of suspected fentanyl.

35. Law enforcement later queried the South Carolina registration affixed to the rear of the black Chrysler minivan. A Law enforcement database check revealed that the vehicle was registered to EAN Holdings LLC., (known as Enterprise, Alamo, and National car rental companies). Law enforcement then contacted the EAN law enforcement telephone number and spoke with an EAN representative who provided that the vehicle was rented on or about April 17, 2023 and was due to be returned on or about April 24, 2023. EAN also provided the renter of the vehicle was identified as Gary DAVIS and provided a date of birth and address for DAVIS as well as a telephone number. Law enforcement confirmed through a check of the Florida Driver and Vehicle Information Database (DAVID) that DAVIS's birthdate and address was the same as provided by EAN. A Law enforcement database check of the phone number provided revealed that as of February 15, 2023, it was registered to another person in Atlanta, Georgia.

[remainder of page left blank intentionally]

## CONCLUSION

WHEREFORE, on the basis of the foregoing, your affiant respectfully submits that probable cause exists to charge DAVIS with did conspiracy to possess with intent to distribute more than 40 grams of fentanyl in violation of Title 21, United States Code, Section 846, possession with intent to distribute more than 40 grams of fentanyl in violation of Title 21, United States Code, Section 841(a)(1), conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of Title 21, United States Code, Section 846, and attempt to possess with intent to distribute more than 5 kilograms of cocaine in violation of Tile 21, United States Code, Section 846.

Respectfully submitted,

_____ FBI
Special Agent Joseph Dalessio
Federal Bureau of Investigation

Sworn and Attested to me by Applicant by FaceTime per the requirements of Fed. R. Crim. P. 4(d) and 4.1 on the ___ day of April 2023.

_____
HONORABLE EDWIN G. TORRES
UNITED STATES CHIEF MAGISTRATE JUDGE

11